## WILLIAM CRAIG *v.* A. H. PATTISON.

1. PRIVILEGE TAX. *Store. Code* 1892, § 3390. *Laws* 1896, *sec.* 2, *p.* 50.

   The fact that merchandise kept for sale is so kept partly in a dwelling and partly in a smokehouse, does not exempt the owner from liability to a privilege tax upon a "store," under code 1892, § 3390 and laws 1896, sec. 2, p. 50.

2. SAME. *Landlord. Tenants. Farmer.*

   A farmer who keeps merchandise at his farmhouse for sale at retail at a profit, though he sells only to his tenants, conducts a "store," and is liable to a privilege tax under the statute.

3. SAME. *Evidence of value.*

   If it be shown that goods were sold from a store, and that privilege tax was not paid thereon, and there be no evidence of the value of the stock, other than the value of the goods so sold, there can under the statute, be no recovery for the goods, since a privilege tax of some amount is imposed upon all "stores."

FROM the circuit court of Tallahatchie county.

HON. F. A. MONTGOMERY, Judge.

The facts are stated in the opinion.

*Eskridge & Dinkins,* for appellant.

We think the proof abundantly shows that the defendant was a storekeeper in the ordinary sense of that term, and certainly as contemplated by the revenue act of 1896 and the decisions of this court. The evidence shows that the defendant kept her groceries, snuff, tobacco, soap, etc., in her "smokehouse," and her dry goods in the west room of her dwelling house, and some of them arranged on shelves, as in regular stores.

The plaintiff shows that all the articles charged against him in her account were bought from the defendant. An examination of the account will disclose that twenty-four different varieties of articles are enumerated in it. A pretty large variety

for one who claims to have no store. It does not matter that defendant kept her goods for sale in her smokehouse and in the west room of her dwelling; the revenue law will as effectually reach and operate on her as it would in open market. The word "store," as used in the act, is intended to designate any place where goods are deposited and sold by one engaged in buying and selling goods. *Folkes* v. *State*, 63 Miss., 81. "The word, 'store,' means a place where goods are kept on deposit, especially in large quantities; a warehouse, and also a place where goods are kept for sale in large or small quantities. Until the legislature undertakes the work of classification of stores generally, we must hold the general term used in the code to embrace every species of store not otherwise particularly named and taxed." *Pitts* v. *Vicksburg*, 72 Miss., 181.

Again, the defendant is not exempt from the revenue tax because she kept goods for sale at a profit, to be sold only to the laborers on her plantation, and only kept on hand such goods as were necessary for her tenants. *Alcorn* v. *State*, 71 Miss., 464. In this case the court uses this language in explanation of the revenue law: "The privilege tax imposed by our law in cases of this character, is not upon mercantile firms or upon individuals engaged in the selling of merchandise, but upon stores."

The law reaches and subjects to the payment of a privilege tax, any person, whether lawyer, merchant, farmer, doctor, mechanic or what not, who keeps on deposit goods for sale at a profit. The only difference made by the law is in the amount of the tax imposed, according to the value of the stock on hand at any time, ranging from $300 to $50,000 or more. If we are right in our position that defendant was subject to pay a privilege tax, she clearly had no legal status in court, in demanding a recovery of the account of $67.50 against the defendant.

*C. H. Brown*, for appellee.

The business engaged in by the appellee in supplying her tenants has not a single attribute of a store, nor does it, in a

single phase, merit the adjudication in the cases of *Folkes* v. *State*, 63 Miss., 81; *Alcorn* v. *State*, 71 Miss., 464; *Pitts* v. *Vicksburg*, 72 Miss., 181. The court, in the case of *Folkes* v. *State, supra*, says: "The purpose of the statute is to impose a tax on every place where goods are deposited and sold by a dealer engaged in buying and selling goods, and not (as virtually contended for by appellant), to impose a tax on every landlord who supplies his tenants. Such a construction would, in effect, annul the law as now in force relative to landlord and tenant," and, I will add, disconcert the supply system, and contravene public policy.

Granting that appellee was conducting the business of a store without paying the tax as provided for, yet, the appellant must fail in this action, for two reasons, to wit: (1) The proof does not show, as disclosed by the record, that the appellee's "stock of goods" were of any value; (2) the appellee is not seeking through the courts an enforcement of a contract, but stands in the attitude of one who has collected his debt, and the debtor is suing to recover back what he has freely and voluntarily paid.

STOCKDALE, J., delivered the opinion of the court.

Appellant sued in a magistrate's court to recover his share of the crop made by him on appellee's plantation during the year 1896, valued by him at $100. Appellee filed, as offset, an account for supplies furnished appellant during the year 1896, amounting to $67.70. Judgment being rendered for appellant, appellee appealed to the circuit court, and having given bond for the forthcoming of four bales of cotton and two tons of cotton seed claimed by appellant, she retained the same in her possession. It was conceded that appellant made the four bales of cotton and two tons of seed, and admitted by the parties on the trial in the circuit court that Mrs. A. H. Pattison had furnished the supplies charged in the account filed as offset to plaintiff's demand, and that she had not paid any privilege tax nor taken out any privilege license to do business or keep a store during the year 1896, or any part thereof. Plain-

tiff objected to any testimony being introduced to support the account (except a small portion thereof charging articles raised at home by defendant), contending that defendant could not recover for the articles charged therein because they were sold and furnished from her store when she had no privilege license on said store or to keep the same. Plaintiff testified that he made four bales of cotton, weighing five hundred pounds each, worth five cents per pound, and two tons of cotton seed worth six dollars per ton, and he was entitled to half thereof, and that the corn had been divided.

The testimony shows that defendant (appellee) kept for sale, and sold at a profit at credit prices, groceries, dry goods and clothing, in considerable quantities and variety, at her residence on her plantation, but sold only to her tenants, as other planters did; that she purchased quantities of goods at Memphis, Tenn., and other places, and sold at retail for profit at credit prices. Appellee's counsel contends (1) that these goods were kept partly in a room in the dwelling and partly in a smokehouse, and was not a store; (2) that appellee furnished only her own tenants; (3) that no proof of any value of said goods was made. The word store is used to designate a place where goods are sold, and it is not necessary that they be kept in a house to constitute a store. *Folkes* v. *State*, 63 Miss., 81.

The fact that appellee sold only to her own tenants does not argue that her business was not a store. She only sold to a selected class of customers, as she had a right to do. *Alcorn* v. *State*, 71 Miss., 464. "A store" is employed in § 3390, code of 1892, to designate a place where goods are kept for sale by wholesale or retail. "There is no reference to any particular class of goods named. The store may be for the sale of dry goods, clothing, groceries, drugs, or any other article of merchandise kept for sale." *Pitts* v. *Vicksburg*, 72 Miss., 181. And the statute of 1896 adopts the same language on page 46, as § 3390 of the code. It seems clear that appellee's business constituted "a store." It is in testimony that the articles con-

stituting appellee's account against appellant were furnished him from appellee's store, and were valued at $67.70, and the store out of which they came must have been of some value. And if said store was worth no more than $300, the owner must pay $2.50 privilege tax.

The contention of appellee's counsel that she does not stand in the attitude of one seeking the enforcement of a contract, but in the attitude of one who has collected a debt, voluntarily paid, and the debtor seeking to recover it back, is not supported by the record in this case.

Defendant (appellee) did not answer plaintiff's demand, that the matter had been settled and the account paid, but propounded her accounts as a set-off to plaintiff's demand, and asked judgment upon it, and obtained judgment for the amount of the account, with six per centum interest thereon, and, singularly enough, got a judgment in her favor that she retain the cotton and cotton seed bonded by her, and which it was conceded plaintiff had made.

Appellee's effort to distinguish this case from the Alcorn case, because there it was shown that there was a large number of tenants and here it was not so shown, is without force; seeing that appellant offered to prove the same state of facts in this case, his testimony was rejected by the court erroneously, as we think, upon objection by appellee's counsel.

It is evident from the record in this case that defendant below, appellee here, carried on her business in disregard of the statute in reference to privilege licenses, and she cannot base any claim upon her contract for the sale of goods to appellant, except as to such articles as she had produced on her own plantation. Laws 1896, sec. 2, p. 50.

In the attitude of this case, as shown by the record, a new trial ought to have been granted. The assignments of error, are well taken, and are sustained.

*The judgment of the court below is reversed, a new trial awarded, and the cause remanded.*